UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 01-4857-CIV-LENARD

PROVIDED TO BAKER CI
ON  2/11/03
FOR MAILING  D.H.



DONALD HALL, SR., CORA D. HALL, TELITA HALL,  )
DENISE HALL, BRANDON HALL, WILLIE HALL, and  )
DONALD HALL, JR.,  )

        Plaintiff(s)  )

          )

VS.  )

Florida Department of Corrections,  )
Micheal W. Moore, Secretary,  )
Shane Campbell, officer,  )
C. Matthews, Warden,  )
Abel Price, Colonel,  )
Estevedo, Captain,  )
Juarez, Sergeant,  )
Salazar, Classification,  )
Frank Carey, Classification,  )
Kimberly Moore, Classification,  )
Betlyon, Sergeant,  )
L. Platt, Representative,  )
David Pridgen, Warden,  )
Thomas Patterson, Asst. Warden,  )
Stanley Bailey, Asst. Warden,  )
Micheal Rathman, Warden,  )
Robert Williams, Classification,  )
G. Weed, Mailroom Personnel,  )
Hollin, Sergeant,  )
H. J. Sermon, Asst. Warden,  )

1.

Mizell, Property Sgt.,  )
Barton, Property Sgt.,  )
Smith, CM Sgt.,  )
David Worthy, Grievance Coordinator,  )
C. Bernette, officer,  )
S. Salem, Representative,  )
Jones Bowden, Representative,  )
Dr. Lichi, Psyche Doctor,  )
Ronald J. Rice, Medical Doctor,  )
Lisa Hobson, LPN, Nurse,  )
Hiep Nguyen, Medical Doctor,  )
B. Marton, Head Classification,  )
Charles Shockley, Representative,  )
Webster Dickens, Representative,  )
Dr. Solorzano, Medical Doctor,  )
E. Manuel, Medical Doctor,  )
Fortner, Warden,  )
Tanya Ward, officer,  )
Luke, Captain,  )
Marcia Rhoden, Lieutenant,  )
Holton, Mailroom Personnel,  )
Roundhardt, U.S. Postal Service Personnel,  )
U.S. Postal Service Office, Sanderson, Fl,  )
U.S. Postal Service Office, Jacksonville, Fl, are sued in their  )
proper person individual and official capacities.  /

## AMENDED
## <u>COMPLAINT</u>

2.

## JURISDICTION

This complaint is filed under 42 U.S.C. 1983 Civil Rights in violation of the State and Federal Constitution to the United States Constitution, and this Court has jurisdiction to entertain the instant application.

## PRELIMINARY

These facts henceforth arises out of corrupt officials maliciously engaged in egregious, flagrant, misconduct of prisoner's for financial gain; while liberally conspiring to deprive the plaintiff of his liberty interest, that subject plaintiff to inhumane conditions, preclusion of exhaustion of remedies, which resulted in retaliatory transfers. coupled in retaliatory acts against the plaintiff's serious medical needs, engaging in mail fraud/tamper to preclude exhaustions.

## FACTS

1. On August 21, 1998, Plaintiff, Donald Hall, DC# 884929, was a inmate assigned to Everglades Corrections, 1601 S.W. 187th Ave., Miami, Florida,

2. On August 26, 1998, Plaintiff was assigned Kimberly Moore for his team classification officer, who assigned plaintiff to laundry.

3.

3. Laundry supervisor , Sgt. Betlyon, assigned plaintiff to inmate Dwight Jones (Preacher), to push his laundry cart to and fro assigned dormitory.

4. Preacher and Betlyon shared this casual relationship with one another.

5. Circa December 1998, Plaintiff was assigned Ashley as his team Classification officer.

6. Ashley assigned plaintiff an impaired inmate assistant for dialysis patient , Jim Hatten.

7. Circa April 1999, impaired Hatten became bellingerent due to the plaintiff's negation of further canteen purchase at plaintiff's expense.

8. Hatten negated any further assistance from the plaintiff, insisting plaintiff bathe him and prepare his bed , in which he was capable.

9. Hatten placed a lock into a sock threatening to inflict bodily harm to the plaintiff.

10. Plaintiff put Ashley on notice via grievance of the incident , within his concerns for Hatten's mental disabilities , in which he was not trained.

4.

11. Ashley summoned the both to his office with counseling coupled with threats of confinement if word of any further disagreements.

12. On May 25, 1999, Plaintiff alerted Verna Florence, RN, Coordinator of the impaired inmate assistant of Hatten's intolerable demands for which he had been reprimanded.

13. Florence reassigned the plaintiff impaired Hugo Salazar, who was an insulin patient.

14. Hugo desired to do everything on his own, except the assistance in long-distance walking to and fro.

15. Circa August 1999, institution gained urgent need for plaintiff's impaired assistant due to James McCluean (Blindman) assistant's transfer.

16. MaCluean and Preacher had this ancient relationship dealing in controlled substances at the assistance of staff, who stood to earn a fee.

17. McCluean was a war veteran who lose his sight in active military, and suffered from severe migraines, who suffered a collateral misfortune, and won "Millions of Dollars" for accrued accident at Home Depot.

18. Preacher was the connections for McCluean herion supply, in which he frequently used for his migraines, due to the institutions medical department prohibition of his prescribed percodans.

19. McCluean would have staff awaken the plaintiff 2:00 A.M. and 3:00 A.M. in the morning to escort him to medical due to his migraine attacks, which staff had known to be a product of derogative herion.

20. Plaintiff suggested a plausible solution to alleviate the constant early morning awakening.

21. Plaintiff had knowledge of McCluean's religious preferences, and encouraged his reliance to prevent any further discomforts.

22. Henceforth, McCluean derived to the conclusion, that is, if he could amicably connect with a resource that had high grade product, he'd make it worthwhile.

23. Plaintiff made necessary contact to McCluean assistance due to his sufferings.

24. Plaintiff provided a price of five grand for a chalk stick of herion.

25. McCluean became overwhelmed in excitement, as he had superior knowledge of herion, at which point, he knew he was not being taken.

6.

26. McCluean commences explanation of the possibilities to his mother's suspicion to the large amounts of monies, in which fifteen hundred was all she's accustomed.

27. McCluean, on the institution phone, contacted his elderly mother in Gainesville to withdraw ten five hundred dollars money order to send to the plaintiffs P.O. Box.

28. Plaintiff, as he stood near, who dialed the number, heard McCluean tell his mother that, the money was his, and she should comply with his request of it.

29. The very next day, McCluean's father intervened and called the institution for possible extortion.

30. Inspector Clark summoned McCluean to her office to notify him she received call from his father with concerns of his request for such immense amounts of monies and possible extortion.

31. McCluean explained to Clark his decision to open an bank account in Miami-Dade County for meaningful access.

32. That very night, McCluean called his father to explain the inconvenience he incurred notifying the institution.

33. Inspector Clark, upon further investigation and reviewing the institution phone monitor, remanded McCluean to her office.

34. Clark solicited McCluean enable her in prosecution of officer's learned via her investigation to have received money from him by producing money order receipts.

35. McCluean negated any and all allegations of Ms. Clark, who requested he listen to the tape monitor.

36. Ms. Clark summoned an officer, and told plaintiff he could leave, that a officer would return McCluean to the dorm.

37. Plaintiff returned to his dorm, and McCluean was confined pending investigation.

38. Preacher and staff commence accusing plaintiff for McCluean investigation, and their financial losses.

39. Therefrom, Sgt. Betlyon was placed on administrative leave, purportedly for a sex scandal with inmate, Victor Dove, who literally had full operation of the laundry.

40. Victor Dove was placed in administrative confinement pending investigation, and subsequent transferred.

41. On April 6, 2000, Everglades Institutions compound was evacuated due to emergency fire threat.

42. Plaintiff was transferred to South Florida Reception Center until further notice of safe conditions.

43. Once arrival, plaintiff was assigned K-Dormitory 1104 pending outcome.

44. Plaintiff entrance acknowledge the floor was covered with speckles of water, toilet paper, and dark objects.

45. Plaintiff solicited officer Campbell, prior entrance, for a mop of what had learned to be unsanitary water and feces from a broken toilet.

46. Campbell assured compliance of the plaintiff's request, but at the present moment, he'd need plaintiff to lockdown.

47. Campbell at approximately 7:00 P.M. secured the door, absent his return of the mop.

48. Campbell at approximately 9:30 P.M. return, was to assign plaintiff a roommate.

49. Plaintiff, at this point, shows Campbell the urgent need for a

mop while abandonment of the cell.

50. Plaintiff roommate in hesitant, entered the cell, as the plaintiff exit in refusal to be further subject to such inhumane indecencies.

51. Campbell ordered plaintiff reenter the cell, without success.

52. Campbell endeavor a second order for plaintiff to reenter the cell, again without success.

53. Campbell grabbed his radio for security back-up.

54. Back-up arrived, and plaintiff was handcuffed and placed in confinement, under better conditions.

55. On April 7, 2000, Plaintiff was transferred back to Everglades due to safe conditions of fire threat.

56. On April 10, 2000, Sgt. Betlyon returned from administrative leave set-out to gain recognition and revenge.

57. On April 14, 2000, Plaintiff was handcuffed and escorted to captain Estevedo office.

58. Accompanied him upon the plaintiff's arrival was Sgt. Betlyon.

59. Estevedo asked Plaintiff what took place at South Florida Reception Center?

60. Plaintiff presented his version of the incident, as it took place.

61. Sgt. Betlyon instructed Estevedo confine the plaintiff.

62. Estevedo avers, well, word is you assaulted a officer while assigned at South Florida Reception Center.

63. Plaintiff subjoins Estevedo memory to the fact, he has been on his compound some two years, and never had he heard of him in such propensity of violence.

64. Plaintiff thereafter was escorted to confinement.

65. While in administrative confinement, Sgt. Hollin (Mark Ferman), investigator officer, delivered the plaintiff's disciplinary report infraction code (1-1) Assault or Attempt.

66. Hollin ask plaintiff did he have any witnesses he wish to be listed? Plaintiff answered in the affirmative.

67. Plaintiff requested his roommate be listed as a witness.

68. Hollin requested the plaintiff's names and DC#'s of the witnesses he wishes to be listed.

69. Plaintiff asserted he could not provide names nor DC#'s due to his unfamiliarity of faces or names of a new institution.

70. Sgt. Hollin ask plaintiff did he recall the dorm his roommate resided that he may see if he could locate him.

71. Plaintiff told Hollin his roommate was black with grey hair; older man, with a jamaican ascent, and resided in K-1101 South Florida Reception Center.

72. Hollin said, it appear you don't have any witnesses on your behalf, but I'd see if I could locate him.

73. On April 18, 2000, Plaintiff was taken before the disciplinary team member's, Salazar, Juarez in violation of clearly established Florida Administrative Codes.

74. Therein, Juarez read the facts to the disciplinary infraction; stating at his conclusion, you listed no witnesses, at which point; explanation was provided of those reasons, and Hollin endeavor to locate witnesses.

75. Juarez solicited the plaintiff's version of the purported incident occurrences at South Florida.

76. Plaintiff at the conclusion was ordered out, and minutes later remanded.

77. Plaintiff was then given the blatant pretext his roommate had been deported rather located.

78. Therefrom, the team found plaintiff guilty based on officer's statement, collectively, sixty days confinement consecutive three hundred sixty four days forfeited gain-time.

79. Plaintiff, upon return to his cell, submitt appeal to Warden Matthews to the team's decision; collectively informal grievances against Estevedo, Salazar, Juarez; absent response.

80. On April 27, 2000, Plaintiff submitted Formal Grievance to Micheal Moore in complain against the institutions failure of acknowledge or response to grievances in a timely fashion.

81. Therefrom, defendants in collusion launches an all-out attack on the plaintiff in retaliation for redress of grievances.

82. On April 80, 2000, Plaintiff was denied the right to eat for the grievances submitted against defendants.

83. Plaintiff, on this same date, submitted informal grievance to Matthews of the denial to eat, collectively a copy to his appeal attorney, Chris Livingston.

84. Livingston had noticed the institution in an identical draft of the claims against them, prior plaintiffs purported incident at South Florida, including the plaintiff as a plaintiff party, for legal mail tampering, a violation of attorney client privilege, which was a corroboration, amongst other, to frabricated disciplinary report.

85. On May 5, 2000, Plaintiff gained receipt Log # 00-1054 as a result of Log # 00-611226; respondent Jeannine Moore, who contacted institution in regards to 4/27/00 Formal Grievance. (¶¶ 80)

86. On this same date, Plaintiff gained informal grievance response, respondent Matthews denied. (¶¶ 88)

87. On May 22, 2000, Plaintiff grievances Log #'s 00-1054, 00-1240 was summarily denied, respondents Matthews, Sermon in violation of clearly established Florida Administrative Codes coupled with omission of supervisory authority.

88. On May 25, 2000, Plaintiff submitted appeal Log # 00-613457 to Micheal Moore for further review.

89. On June 9, 2000, Plaintiff's grievance Log # 00-614782 in reference Estevedo, Salazar, Juarez was summarily denied.

90. On June 15, 2000, Plaintiff's appeal Log # 00-613457 was denied, respondent L. Platt in collusion designed to deprive plaintiff administrative due process.

91. On June 19, 2000, Frank Carey in collusion, two days surpass plaintiff's confinement release, delivered notice for close management review, a retaliatory act in violation of administrative due process.

92. On June 27, 2000, Plaintiff submitted informal grievance to Matthews in complain of fraudulent practice of close management notice.

93. On July 18, 2000, Plaintiff's close management review hearing was convened.

94. Therein, the team member's Abel Price, K. Moore, Rhodes recommended close management one, based on officer's statement in violation of due process that infringes on double jeopardy clause to collateral punishment.

95. On July 20, 2000, representatives vicariously for Michael Moore, maliciously conspired to the teams recommendation in violation of clearly established Administrative due process and Codes.

96. On July 28, 2000, Plaintiff gained informal grievance, respondents, C. Matthews, K. Moore in collusion denied plaintiff Administrative due process.

97. On August 4, 2000, Plaintiff submitted Formal Grievance Log# 00-1925 to Matthews, respondent H.J. Sermon in violation of Administrative due process denied.

98. On September 5, 2000, Plaintiff submitted Formal Grievance Log # 00-1925 to Michael Moore for collateral review.

99. On September 12, 2000, Everglades transferred plaintiff to Columbia Corrections on close management one as a punishment for redress of grievances coupled with personal vendetta, absent his personal property.

100. Circa September 20, 2000, Plaintiff submitted an inmate request to Sgt. Mizell to notify Everglades for the receipt of the plaintiff's property.

101. On September 21, 2000, Plaintiff while assigned close management gained Log # 00-1925 returned to sender for undue postage, which were sufficient.

102. On October 24, 2000, Plaintiff gained Formal Grievance Log # 00-625178, respondent L. Platt in collusion deprived plaintiff exhaustion of Administrative due process, in suggestion plaintiff resubmit, instead, clarification was sought.

103. Circa October 25, 2000, Mizell received receipt of the plaintiff's personal property comprising of GPX radio, Pro 25 headphones, Fila tennis shoes etc.

104. Mizell delivered the plaintiff's box of property to his cell providing only the Fila tennis, radio's and other comprised property were prohibited CM1 inmates.

105. Upon request, Sgt. Mizell permitted a personal inspection to the plaintiff of his personal property. (Affidavit)

106. Mizell in collusion, deliberately omitted copy receipt of the plaintiff's personal property in violation of Florida Administrative Codes.

107. Subsequently, Mizell was released from the property room, and Sgt. Barton resumed his position.

108. On November 1, 2000, Plaintiff had his wife purchase a dictionary from authorized vender's with postages fee's incurred to be forwarded plaintiff's current address.

109. On November 3, 2000, Plaintiff gained Log # 00-625665 response in reference Log # 00-1925

110. On November 6, 2000, Plaintiff gained clarification Log # 00-625665, respondents L. Platt, Webster Dickens in collusion rendered response in violation of Administrative due process.

111. On November 9, 2000, G. Wood, mailroom personnel, in collusion deliberately returned to senders plaintiff's dictionary in violation of Florida Administratives Codes.

112. On November 16, 2000, Plaintiff submitted a written request to G. Wood inquiring information to the dictionary with response:

When your book comes we will forward to you.

113. On December 6, 2000, Plaintiff submitted informal grievance Log# D001189 to mailroom after gaining information that the dictionary; indeed, had been returned. (Affidavit).

114. On December 26, 2000, Plaintiff absent 6th December response submitted informal grievance (renewal) to David Pridgen Log# D001938.

115. On this same date; Plaintiff submitted Formal Grievance Log# 00-12-266 to David Pridgen of the fraudulent disciplinary report that landed him on CM that did not adhere to Administrative due process.

116. On January 4, 2001, Plaintiff gained Log# 00-12-266, respondents Robert Williams, David Pridgen in their response, collusively comports in fraudulent practice.

117. On January 9, 2001, Plaintiff submitted Formal Grievance Log# 01-01-096 absent receipt of both informal grievances to David Pridgen, respondents Patterson and Williams responded in violation of Administrative due process.

118. On this same date; Plaintiff submitted Formal Grievance Log# 01-602335 to Michael Moore for further review.

119. On January 29, 2001, Plaintiff gained Log# 01-602335 respondent L. Platt collusively omitted his supervisory authority to correct accumalative

retaliatory acts against the plaintiff.

120. On February 4, 2001, Plaintiff submitted Formal Grievance Log # 01603620, respondents L. Platt, Webster Dickens in collusion circumvents relief deemed in omission of their supervisory position.

121. On February 6, 2001, Plaintiff submitted informal grievance acquiring information to his dictionary with response:

> No! I do not have your books, why would
> I. And if I did you would be given a receipt
> as is by the rules, if I get a book I will be
> to see you.

122. On July 1, 2001, Plaintiff submitted informal grievance Log # D013374 to officer Bernette in her collusive, unlawful confiscation of the plaintiff's legal books, absent response.

123. On July 19, 2001, Plaintiff submitted Formal Grievance Log # 01-07-293, respondents D. Worthy, V. Dukes in their collusive ratification granted relief efficient to ongoing retaliatory acts against the plaintiff.

124. On or about July 26, 2001, CM inmates became eligible for radio's, telephones, and dayroom privileges, in which had been breached immediately by the defendant parties in the Osterback settlement, and remains a constitutional myth.

125. On August 6, 2001, Smith deliberately in collusion assigned the plaintiff to Restricted Labor Squad, absent medical screening.

126. Smith succinctly stated, the word comes from up top so have your shit packed in the morning you moving to Quad Four.

127. On August 7, 2001, Plaintiff submitted emergency grievance Log # 01624192 to halt any further conspiracy to retaliation.

128. On August 8, 2001, Smith assigned plaintiff to work on officer Terry's reel mower squad.

129. On this same date, approximately 7:30 P.M., Plaintiff declared a medical emergency in complain to pain and swelling of his legs.

130. Lisa Hobson (LPN) responded, whereupon examination prescribed medication for pain; no work, no prolong standing health slip/pass, and scheduled plaintiff be seen immediately by the doctor.

131. On August 9, 2001, Plaintiff was examined by Doctor Gonzalez; that issued health slip/pass, lower bunk, houseman, who succinctly stated: You know they don't treat you right.

132. On August 13, 2001, Plaintiff submitted informal grievance for his receipt of the health slip/pass issued him by Doctor Gonzalez Log # D01-4345.

133. On August 19, 2001, Plaintiff submitted informal grievance Log # D014430 to Micheal Rathman in complain of job assignment prior medical screening that caused the plaintiff irreparable injuries.

19.

134. On this same date, Plaintiff submitted informal Log # D014429 to Barton for receipt of his radio and headphones.

135. On August 20, 2001. Plaintiff submitted informal grievance Log # D014498 acquiring information after learning someone in mental health in collusion approved Restricted Labor Squad.

136. On this same date, Plaintiff gained his health slip/passes.

137. On August 24, 2001, Plaintiff gained informal grievance Log # D014498, respondent Ronald J. Rice. M.D., of Columbia's medical department, in collusion, responded plaintiff's grievance need to be addressed to medical.

138. On August 30. 2001, Plaintiff submitted Formal Grievance Log # 01-08-447, respondents Hiep Nguyen, M.D., Micheal Rathman in collusive intent denied.

139. On this same date, Plaintiff submitted Formal Grievance Log # 01-08-448 to inadequate informal grievance response. (¶¶ 137)

140. On September 3, 2001, Plaintiff submitted informal grievance Log # D014810 to denial of recreation and gain-time, absent reasons.

141. On September 4, 2001, Plaintiff gained Log # D014429 informal grievance to Barton collusive denial of plaintiff's radio and headphones.

142. On September 25, 2001, Plaintiff submitted Formal Grievance Log # 01628973 in complain of his radio and headphones, respondent C.

Shockley denied in collusion with institution response.

143. On this same date, Plaintiff submitted Formal Grievance Log # 01628974 to Micheal Moore for further review of the classification job assignment prior medical screening.

144. On September 26, 2001, Plaintiff submitted informal grievance to front and back copy of check purportedly mailed to final call newspaper, upon learning they hadn't receipt of check, absent response. ( Letter Final Call)

145. On October 5, 2001, Plaintiff gained responses Log # 01628973, 01628974, respondent C. Shockley in collusion denied; and approved further inquiry of job assignment, prior medical screening.

146. On October 8, 2001, Plaintiff submitted informal grievance, absent response in regards to his legal mail being returned to sender for postage due twenty three cent; that contained seven page motion at thirty three cent sufficient postage in violation of mail fraud, access to court.

147. On October 18, 2001, Plaintiff submitted Formal Grievance Log # 01631614, respondents S. Salem, J. Bowden in collusion with ongoing retaliatory acts denied.

148. On October 22, 2001, Plaintiff submitted Formal Grievance Log # 01-10-344, respondents D. Wo.thy, S. Bailey in collusive agreement denied.

149. On this same date, Plaintiff submitted Formal Grievance Log # 01-10-345 in absent informal grievance response of Final Call News, respondents D. Worthy, S. Bailey in collusion, discriminated against the plaintiff's reading preferences.

150. On November 4, 2001, Plaintiff submitted Formal Grievance Log # 01633672, respondent S. Salem denied.

151. On this same date, Plaintiff submitted Formal Grievance Log # 01633671, respondents S. Salem, J. Bowden denied.

152. On November 19, 2001, Plaintiff submitted Formal Grievance Log # 01634554 for acknowledgement receipt of recently submitted grievances, respondents S. Salem, J. Bowden in collusive agreement, considered plaintiff's grievances not legible.

153. Hereforth, plaintiff would be compelled to work seven days a week deliberately to preclude his writing of grievances to the wrongs against him.

154. Circa January 17, 2002, prior going to work, plaintiff's hypertension clinic was summoned.

155. Nurse Davis conducted the plaintiff's bloodpressure taken, which were 137/110, who prescribed hypertension medication, clonidine, and for plaintiff to return his cell and lay down.

156. Sgt. Smith informed nurse Davis, that, they on their way to pick inmate Hall up for work.

22.

157. Davis said, that inmate ain't going anywhere but to his cell and lay down.

158. Smith said ain't nothing wrong with him, they coming for him, he ain't going to die is he? let him die then.

159. On January 16, 2002, Wanda Sheppard, classification officer, issued plaintiff's release paper's recommendation.

160. Plaintiff was working H-Dormitory when Sheppard issued the recommendation paper's.

161. Upon plaintiff's return, Sgt. Molean said, Hall, Ms. Sheppard has your green paper's to be released.

162. Plaintiff, understanding the conspiracy, waved his hand downward in disbelief in continued route to his cell, for plaintiff scheduled date for review was 1/31/02, in which was doubtful.

163. Molean called the plaintiff to the wicket, and said, Hall I'm not bull-shitin, I seen your paper in her stack.

164. On January 21, 2002, Plaintiff, exiting G-Dorm to work H-Dorm, asked Sheppard, who was talking to Smith, about the green paper's, who hastily stated for the first time, you can leave, you can leave! I have nothing.

165. Molean who was supervisor of H-Dorm, was questioned by the plaintiff to Ms. Sheppard's response in query of the recommendation paper's.

166. Molean said, she's a damn lie, I had the paper's in my hand, she wanted me to keep them to you all came in, and I said no.

167. On January 31, 2002, Plaintiff was released from close management to open population.

168. On this same date, Plaintiff was assigned inside grounds job assignment by head classification B. Marton, who was also responsible for Restricted Labor Squad assigment, where Sheppard was on vacation when Marton and Smith collusive act of retaliation, supported by Dr. Lichi medical release.

169. On March 13, 2002, Plaintiff submitted inmate request to classification Doug Johns for job change, after notifying security staff of medical condition.

170. On March 14, 2002, Plaintiff gained response to inmate request, respondent Johns seen no health restriction in computer, which had been deleted for efficient retaliation purposes.

171. On May 10, 2002, Plaintiff was transferred to Baker Correction, nexus Columbia Correction to remain in close circuit of the effects and damages of latent ongoing retaliation, which comprises his medical conditions, collectively retaliation transfer.

172. On this same date, upon arrival to Baker Corrections, the plaintiff had to be placed in the infirmary due to his blood pressure $^{150}/_{100}$.

173. Medical staff in collusion simultaneously with Administrative and Security staff has deliberately acted to circumvent adequate medical attention to the plaintiff.

174. On October 21, 2002, Plaintiff submitted Formal Grievance Log # 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 for medical shoe replacement, respondents Solorzano,

M.D.; E. Manuel; M.D.; and Fortner denied.

175. On November 9; 2002, approximately 7:00 A.M., officer Tanya Ward (Styles) via marriage, conducting count discovered plaintiff asleep.

176. Ward commenced kicking the plaintiff's cell door in a unhaltedly manner as plaintiff aroused in an unconscious upward position.

177. Ward deliberately kicking the door, was asked, please don't kick the door.

178. Ward at conclusion of count, summoned plaintiff to the control wicket; and Sgt. Horzouri asked what's the problem?

179. Plaintiff explained the above, and Horzouri subsided with Ward's unprofessionalism; with explanation this was allowed.

180. Horzouri then says; its written on your contact card, that you had been warned before for sleeping during count.

181. Plaintiff responded he had never been provided any oral or written notification of such; and that, that evidence had been falsified.

182. Horzouri blatantly instructed Ward to write him a DR for sleeping during count.

183. Horzouri stated, I ought to write you two DR's; you think you're a lawyer; I'm notifying the captain and see if I can get you locked up now; go to your cell.

25.

184. Horzouri asked the plaintiff at his departure, is he on medication?

185. Plaintiff answered in the affirmative.

186. Horzouri asked the plaintiff did he have a health slip/pass from medical that cause you to sleep during count.

187. Plaintiff commence explanation of the taken and affect of the hyper-tension medication, and that, no such medical pass exist.

188. Horzouri, appeasement at the plaintiff's explanation, relinquished the plaintiff of his former intent.

189. On November 12, 2002, Plaintiff submitted emergency grievance Log # 026-33073 to Micheal Moore for investigation of ongoing occurences.

190. On this same date, Plaintiff submitted Formal Grievance Log # 02-632562, respondents S. Salem, C. Shackley in collusion denied further review, determining plaintiff's grievance untimely. (77 174)

191. On November 13, 2002, Sgt. Deese summoned plaintiff to her office for delivery and investigation of disciplinary report authorized by captain Luke.

192. Luke in collusion with Ward, authorized the writing of a disciplinary report, cantrary the charge infraction in violation of Florida Administrative Codes coupled with Administrative due process and retaliation.

193. On November 20, 2002, at approximately 11:00 A.M., plaintiff's disciplinary hearing convened.

194. Factfinder's: Lieutenant Rhoden, Sgt. Johnson dislike for the facts delineated in the DR, coerced plaintiff into a no contest plea.

195. Rhoden proffered (15) days probation if the plaintiff accept a no contest plea.

196. Plaintiff commence explanation that it was not prudent for him to plea no contest to an infraction he wasn't guilty of, and how doing so would effect his chances of clemency.

197. Rhoden suggested the infraction cause for (30) days confinement consecutive with (60) days forfeited gain-time, and if the plaintiff plea no contest, she'd give him (15) days probation since he hasn't had a DR in 2½ years, and that, the plaintiff is required (10) years clean time before eligibility for clemency.

198. Plaintiff briefed his DR history in explanation, and the falsified DR that landed him on CM, and it's pendency under review.

199. Rhoden said, trust me, I been doing time much longer than you, and I would assure you, the courts will not intervene in a DR, and I would find you guilty anyway based on the officer statement.

200. Plaintiff, under duress, and on the reliance of Rhoden's misstatement of law, entered plea of no contest, in which he was told he could appeal the decision.

201. On this same date, Plaintiff was summoned for hyper-tension clinic, whereupon his blood pressure was $^{160}/_{100}$ attributed by defendants failure to

comply with Florida Administrative Codes and Administrative due process.

202. On November 27, 2002, Plaintiff submitted his Formal Grievance Appeal Log # 02-6-34797 to Warden Fortner of the disciplinary's team collusive violation of Administrative due process.

203. Mailroom personnel Holton in collusion purportedly inadvertently forwarded plaintiff's disciplinary appeal to Micheal Moore, checked to Warden in upper left hand box.

204. Respondents, S. Salem, and C. Sheckley in collusion, returned appeal providing (15) days to resubmit. (¶¶ 202)

205. On December 13, 2002, Plaintiff submitted Formal Grievance Log # 03-600245 to Warden for correction of unlawful sentence.

206. Mailroom personnel Roundhardt, U.S. Postal Services, in collusion, forwarded plaintiff's grievance, checked Warden, to Micheal Moore.

207. Respondents, S. Salem, and C. Sheckley in collusion returned grievance, again, for failure to exhaust institution level.

208. On December 30, 2002, Plaintiff resubmitted his Appeal Log # 03-600257, in reference log # 02-6-34797, checked Warden, and mailroom personnel Roundhardt, again, forwarded plaintiff's appeal to Micheal Moore, to deliberately preclude plaintiff's exhaustion of Administrative review.

28.

209. Respondents  S. Salem, and C. Shockley returned plaintiff's resubmitted appeal providing, once again, another (15) days in collusion with Holton and Roundhardt's deliberate mail fraud to resubmit a timely appeal.

210. On this same date, Plaintiff submitted Formal Grievance Log # 036002156, notifying Central Office to the institutions legal mail tamper, attorney-client privilege violation, invasion of phone monitor for retaliatory purposes, efficient for plaintiff's retaliation transfers.

211. Respondents, S. Salem, and C. Shockley, in collusion, determined plaintiff's notice to be in non-compliance.

212. These facts as a result of the plaintiff's unlawful conviction via conspiracy is attributable and at all times relevant.

213. Defendant parties are directly  and/or contribution to the claims and damages hereforth against the plaintiff(s)  holding equitable standing.


## Count I - Fraud

Defendants willfully and intentionally while acting under color of state law conspired, to wit, falsified disciplinary report on 4/6/00, fraudulent misrepresentation, mail fraud, mail tamper, written **or** oral statements Florida Stat. 837.06; and is liable for the damages it cause, or is liable vicariously for the damages it cause, or is liable under supervisory authority for

the damages, and are jointly and severally liable for monetary damages in their individual and official capacities; and contribution.

## Count II - Retaliation

Defendants willfully and intentionally while acting under color of state law conspired, to wit, falsified disciplinary report, mail fraud, access to court, deliberate medical indifference, dictionary, radio and headphones property, final call newspaper, recreation, gain-time, legal mail tamper, confiscation of legal books, transfers; retaliatory acts against the plaintiff to ongoing occurrences by defendants; as a consequent of redress of grievances, and is liable for the damages it cause, or is liable vicariously for the damages it cause, or is liable under supervisory authority for the damages it cause, and are jointly and severally liable for monetary damages in their individual and official capacities; and contribution.

## Count III - Discrimination

Defendants willfully and intentionally while acting under color of state law conspired, to wit, denial of the plaintiff's admissible reading religious material and/or preferences; and is liable for the damages it cause, or is liable vicariously for the damages it cause, or is liable under supervisory authority for the damages it cause, and are jointly and severally liable for monetary damages in their individual and official capacities; and contribution.

30.

## Count IV - Deliberate Indifference

Defendants willfully and intentionally while acting under color of state law conspired, to wit, denial of adequate medical attention, elusion of adequate responses to medical needs, medical shoes, hypertension, authorization to Knowingly dangerous job assignment absent medical screening apt to efficient ongoing retaliation, and is liable for the damages it cause, or is liable vicariously for the damages it cause, or is liable under supervisory authority for the damages it causes, and are jointly and severally liable for monetary damages in their individual and official capacities, and contribution.

## Count V - Emotional Distress

Defendants willfully and intentionally while acting under color of state law conspired, to wit, intentional infliction of emotional distress to ongoing retaliation, above and beyond already associated stress due to the plaintiff's unlawful conviction, and is liable for the damages it cause, or is liable vicariously for the damages it cause, or is liable for the damages under supervisory authority, and are jointly and severally liable for monetary damages in their proper person individual and official capacities, and contribution.

31.

## Count VI - Conspiracy

Defendants willfully and intentionally while acting under color of state law conspired, to wit: civil conspiracy to mail fraud, falsified disciplinary report to subsequent chain conspiracy to deliberate indifference to plaintiff serious medical needs sufficient to ongoing retaliatory acts and transfers to the effect plaintiff had to suffer, and is liable for the damages it cause, or is liable vicariously for the damages it cause, or is liable under supervisory authority for the damages it cause, and are jointly and severally liable for monetary damages in their proper person individual and official capacities, and contribution.

## Count VII - Civil Rights Violation

Defendants willfully and intentionally while acting under color of state law conspired, to wit, to infringement that deprive the plaintiff's his constitutional and civil rights to the first, fourth, fifth, eighth, and fourteenth amendment implemented under the due process of law guaranteed under the United States Constitution to the effect plaintiff had to suffer cruel and unusual punishment for redress of grievances, and are liable for the damages it cause, or is liable vicariously, or is liable for omission of supervisory authority, wherein, no damages are required, just that the right has been

32.

violated is sufficient for recovery; and are jointly and severally liable for monetary damages in their proper person individual and official capacities for purposes of 42 U.S.C.1983; and contribution.

## Relief

WHEREFORE, Plaintiff demand damages of the defendants jointly and severally as follows:

Compensatory damages in the amounts of $ 500,000.00;

Punitive damages in the amounts of $ 500,000.00,

Fraud damages in the amounts of $ 500,000.00;

Retaliation damages in the amounts of $ 1,000,000.00;

Discrimination damages in the amounts of $ 1,000,000.00;

Deliberate Indifference damages in the amounts of $ 10,000,000.00,

Emotional Distress damages in the amounts of $ 10,000,000.00,

Conspiracy damages in the amounts of $ 1,000,000.00;

Civil Rights Violations in the amounts of $ 1,000,000.00; for each proven violation, and declaratory judgment to be entered against defendants; and;

## Mandatory Injunction

Prohibit defendants from further acts of retaliation against the plaintiff, expunge of all illicit disciplinary reports arising therefrom, compel the defendants to enjoin intelligence and halt execution of the plaintiff's unlawful conviction and sentence in violation of Article I Section 17, of the Florida Constitution via conspiracy, compel defendants to re-mand plaintiff to Everglades and/or South Bay institutions, which the plaintiff has a legal right virtually compelling defendants undo the wrong created; compelling medical department/agency refrain conspiracy to the plaintiff serious medical needs; compel U.S. Postal Offices and subcontractor's, mailroom personnel, refrain from further mail fraud, mail tamper, to deliberately conspiring with Admininistrative, Security, Medical Department to preclude exhaustion of Administrative due process to redress of grievances, violation of attorney-client privilege, denying prompt access to court; and, decertification of grievances process; and,

Plaintiff demand trial by jury

On this __11th__ day of February 2003.

/s/ _Donald Hall_
Donald Hall, pro se

I declare under the penalty of perjury that the facts herein are true and correct.

/s/ _Donald Hall_
Donald Hall, pro se

34.

Certificate of Service

I Hereby Certify, that a true and correct copy of the foregoing has been furnished by U.S. Mail on this 11th day of February 2003, to: David J. Glantz, Esq., 110 S.E. 6th St., 10 floor, Ft. Lauderdale, Fl 33301-5000, N.A.A.C.P., 1105 N.W. 5th Ave., Gainesville, Fl 32601, Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, DC 20530-0001, Florida Department of Law Enforcement, Post Office Box 1489, Tallahassee, Fl 32302, American Civil Liberties Union, 4500 Biscayne Blvd., Suite 340, Miami, Fl 33137-3227, Cora D. Hall, Brandon Hall, Willie Hall, Denise Hall, 20500 N.W. 22nd Avenue, Miami, Fl 33055, Telita Hall, Donald Hall, Jr., 2601 N.W. 207th Street, Apartment 248, Miami, Fl 33056, Pacific Institute of Criminal Justice, 1868 San Juan Avenue, Berkeley, CA 94707, Department of Corr's, 2601 Blairstone Rd. Tallahassee, Fl 32399-2600.

/s/ _Donald Hall_

Donald Hall, pro se

35.